# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Sobolewski and
Janet Sobolewski,

                Appellants

        v.

Schuylkill County Tax Claim
Bureau, In Re: Consolidated
Return of the Tax Claim Bureau
of Schuylkill County From
the September 17, 2018 Upset Sale

:
:
:
:
:
:    No. 117 C.D. 2019
:    Submitted: May 24, 2019
:
:
:
:
:
:

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED:  July 31, 2019**

David Sobolewski (Mr. Sobolewski) and Janet Sobolewski (Mrs. Sobolewski) (collectively, Owners) appeal an order of the Court of Common Pleas of Schuylkill County (trial court) that dismissed their objections to the tax sale of their property for nonpayment of real estate taxes.  Owners argue the trial court erred in determining the Schuylkill County Tax Claim Bureau (Bureau) complied with the notice requirements under the Real Estate Tax Sale Law (Tax Sale Law).[1]  Owners also contend the sale was stayed because they entered into a payment plan with the Bureau.  Further, Owners assert the personal service did not comport with the Tax Sale Law.  Upon review, we affirm.

---

[1] Act of July 7, 1947, P.L. 1368, <u>as</u> <u>amended</u>, 72 P.S. §§5860.101-5860.803.

# I. Background

The trial court made the following relevant findings of fact. Owners resided at and owned the dwelling located at 110 Bayview Avenue, McAdoo, Pennsylvania, 18237, in Kline Township, Schuylkill County (Property). According to Bureau records, Owners did not pay taxes due on the Property for tax year 2016. The Bureau scheduled an upset sale for September 17, 2018.

In May 2018, the Bureau sent notices of the tax sale by certified mail to both Owners at the Property's mailing address. Mrs. Sobolewski signed the return receipt card. However, Mr. Sobolewski's receipt card was returned as unclaimed. In August 2018, the Bureau sent a second notice by first-class mail to Mr. Sobolewski at the Property's mailing address. Reproduced Record (R.R.) at 153a. The mail was not returned as undeliverable. R.R. at 81a.

A county-appointed tax claim poster (County Poster) posted notice of the sale on the front door of the Property on July 21, 2018, and filed an affidavit of the posting. County Poster then returned to the Property and personally served both Owners with notice on July 29th. Mrs. Sobolewski signed the notice acknowledging personal service. More than 30 days before the sale, the Bureau published notice in the Republican Herald, the South Schuylkill News, and the Schuylkill Legal Record.

The Property was sold to 100818 Portfolio Trust (Purchaser) at the sale. After receipt of post-sale notices mailed to the Property's mailing address, Owners filed timely objections to the sale in October 2018. The trial court heard the objections in December 2018.

2

At the hearing, the Bureau's Director (Director) and County Poster testified on the Bureau's behalf, and Owners testified on their own behalf.

Director testified that although Mr. Sobolewski did not retrieve the May notice sent by certified mail from the post office, the post office did not indicate an alternate address for him. The Bureau did not further investigate Mr. Sobolewski's address because there was no reason to believe a better address existed "based on the unclaimed sticker." R.R. at 93a. As to the second notice sent to Mr. Sobolewski by first-class mail, Director explained a mailing address is deemed valid when the mail is not returned, and the mail was not returned here. Director also confirmed that County Poster was appointed by the Board of County Commissioners (Board) at a public meeting as documented in the meeting minutes. See R.R. at 82a, 161a. She advised the Bureau complied with all notice requirements under the Tax Sale Law.

As to Owners' allegations regarding a payment plan, Director testified on rebuttal that to initiate a payment plan, the parties execute a written agreement in which the owner agrees to tender 25% of the total amount of taxes due on the property. Director explained the Bureau documents calls from owners about particular properties and related payment plans. However, there was no record of a call from Mrs. Sobolewski to the Bureau regarding the Property.

County Poster testified he has been a duly appointed poster for the Bureau for seven years. County Poster described his two visits to the Property in July 2018. During his first visit on July 21st, County Poster posted notice on the Property because Owners were not home. At his second visit on July 29th, County

Poster <u>personally served Owners</u>.  He recalled Mr. Sobolewski answered the door and invited him inside.  County Poster stated Mr. Sobolewski shared with him that Mrs. Sobolewski handled the bills.  County Poster identified both Mr. and Mrs. Sobolewski at the hearing as the individuals he personally served with notice of the sale.  County Poster particularly remembered Mr. Sobolewski because he reminded him of a friend.

In support of their objections, Owners claimed they never saw a notice posted on the Property.  <u>They both confirmed County Poster visited the Property on July 29th and informed them of the September sale</u>.  Mr. Sobolewski admitted he received notice in person.  R.R. at 118a, 120a.  Mrs. Sobolewski recalled telling County Poster at the time that she paid the delinquent taxes on the Property, and he advised her to call the Bureau's office.  She testified that when she contacted the Bureau, she was told she could enter into a payment plan by making minimum monthly payments of $100.  However, Mrs. Sobolewski could not recall with whom she spoke.  R.R. at 114a.

Mrs. Sobolewski made two payments on the delinquent taxes: $100 on August 20, 2018, and $150 on September 4, 2018.  She believed she effectively entered into a payment plan, and in so doing, stayed the sale of the Property.  Mrs. Sobolewski said she received a payment confirmation email from the Bureau,[2] and thus, she did not follow-up with the Bureau about the status after making these payments.  Both Owners testified they were able to pay the delinquent taxes in full on the Property, and would have done so had they known the sale was still scheduled.

---

[2] However, a copy of this email was not submitted during the hearing.

4

By order dated January 7, 2019, the trial court upheld the tax sale, and it dismissed Owners' objections. Owners appealed. In their statement of errors complained of on appeal, they essentially argued: (1) the Bureau did not comply with the notice requirements under the Tax Sale Law for posting or mailing to Mr. Sobolewski, and it failed to exercise reasonable efforts to locate him; (2) County Poster was not authorized to personally serve notice; and (3) Owners entered into a payment plan with the Bureau, staying the sale.

In its Pa. R.A.P. 1925(a) opinion, the trial court found the Bureau strictly complied with the notice requirements in the Tax Sale Law. It reasoned the Bureau had no obligation to exercise additional efforts to locate Mr. Sobolewski after County Poster personally served him at the Property. The trial court explained when an owner receives actual notice, the Bureau does not have to make additional reasonable efforts under Section 607.1 of the Tax Sale Law, 72 P.S. §5860.607a.[3] Further, the trial court found Owners only paid 13% of the taxes owed, not 25% of the delinquency as was necessary to stay the sale under Section 603 of the Tax Sale Law, 72 P.S. §5860.603.

## II. Discussion

On appeal,[4] Owners argue the Bureau did not comply with the notice requirements under the Tax Sale Law. They challenge County Poster's authority to make personal service. Owners also contend the tax sale should have been stayed because they entered into a payment plan with the Bureau.

---

[3] Added by the Act of July 3, 1986, P.L. 351.

[4] Our review in a tax sale case is limited to determining whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. Montgomery Cty. Tax Claim Bureau v. Queenan, 108 A.3d 947 (Pa. Cmwlth. 2015).

5

## A. Notice Requirements

Section 602 of the Tax Sale Law requires three different forms of notice to property owners before a tax sale: publication, posting, and mail. 72 P.S. §5680.602. The tax claim bureau has the burden of proving strict compliance with all three statutory notification requirements. In re Tax Claim Bureau of Beaver Cty. Tax Sale Sept. 10, 1990, 600 A.2d 650 (Pa. Cmwlth. 1991). If any of the three types of notice are defective, the sale is void. Id.

In addition, for owner-occupied properties, the tax claim bureau must personally serve the owners before it may conduct a valid sale of the property. Section 601(a)(3) of the Tax Sale Law provides that personal service must be performed by a sheriff or his deputy or a person deputized by sheriff, "unless the county commissioners, by resolution, appoint a person to make all personal services required" for owner-occupied properties. 72 P.S. §5860.601(a)(3).

### 1. Posted Notice

Owners argue the sale is void because they did not observe a notice posted on the Property. Section 602(e)(3) of the Tax Sale Law states, "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. §5860.602(e)(3). An affidavit of posting, which indicates the date and time notice was posted on the property, serves as competent evidence that notice was posted on the subject property. Barylak v. Montgomery Cty. Tax Claim Bureau, 74 A.3d 414 (Pa. Cmwlth. 2013).

In order to prove proper posting, the Bureau presented testimony from the County Poster who posted notice on the Property. It also submitted a notarized affidavit indicating the date and time the notice was posted on the Property. Owners sought to counter the Bureau's evidence with their own testimony that they did not observe the posted notice on the Property. However, a fact-finder may reject an owner's contrary evidence that he did not see the posted notice. Barylak. The trial court, as fact-finder, has exclusive authority to make credibility determinations, weigh evidence, and draw reasonable inferences from the evidence presented. Id. The trial court did not credit the testimony of Mr. Sobolewski or that of Mrs. Sobolewski concerning the posted notice. Further, the affidavit of posting corroborates County Poster's in-person testimony that notice was properly posted on the Property. Id.; see R.R. at 162a. Therefore, the Bureau established proper posting.

### 2. Reasonable Efforts & Mailed Notice

Next, Owners contend the Bureau was required to exercise reasonable efforts to locate Mr. Sobolewski because it never received a return receipt card from him. Owners argue the sale is void for failing to notify Mr. Sobolewski by mail.

Due process requires a tax claim bureau to conduct "reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to that party." Farro v. Tax Claim Bureau of Monroe Cty., 704 A.2d 1137, 1142 (Pa. Cmwlth. 1997). Section 607.1(a) of the Tax Sale Law defines "reasonable efforts" in part as:

> a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and

7

> prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. §5860.607a(a).

The purpose of "reasonable efforts" is to effectuate notice on an owner. As found by the trial court, the Bureau sent proper notice by certified mail, return receipt requested, to both Owners. When only Mr. Sobolewski's notice was returned as unclaimed, the Bureau sent notice by first-class mail to him at the Property's mailing address. This notice was not returned, and there was no indication that the address the Bureau used was inaccurate.

In an analogous case, In re Tax Sale of Real Property Situated in Jefferson Township, 828 A.2d 475 (Pa. Cmwlth. 2003), we held the bureau was not required to check outside records, search the internet, or look at phone directories, when it had already confirmed the correct mailing address using assessment records. Here, the Bureau confirmed it had the correct mailing address. Like the owner in Jefferson Township, Mr. Sobolewski "simply chose not to go to the post office to retrieve [his] certified mail and[,] the subsequent notice sent to [Owner] at [his] correct address by first class mail was not returned." Id. at 480 (emphasis added).

Relevant here, Owners do not suggest that the Bureau used an incorrect mailing address for Mr. Sobolewski. Significantly, had the Bureau conducted additional notification efforts, it would not have found another address or means of notifying him. R.R. at 117a. Indeed, Mr. Sobolewski confirmed his address as the Property address the Bureau used. Id. Also, the notice mailed to Mr. Sobolewski by

8

first-class mail was not returned. Thus, the Bureau had no cause to question the validity of the mailing address. See Pitts v. Delaware Cty. Tax Claim Bureau, 967 A.2d 1047, 1055 (Pa. Cmwlth. 2009) (en banc) (emphasizing Jefferson Township). Further, there is no dispute Mr. Sobolewski had actual notice of the tax sale through personal service at the Property, which is the address the Bureau used for its mailings. Here, there was no need to exercise additional efforts to notify Mr. Sobolewski because the Bureau had already confirmed his address and personally served him.

### 3. Personal Service

Additionally, Owners advance a statutory violation under Section 601(a)(3) of the Tax Sale Law. Specifically, they contend the Bureau's failure to produce the resolution appointing County Poster at the hearing means he lacked authority to personally serve Owners. As such, Owners claim the sale is invalid based on improper personal service.

Section 601(a)(3) of the Tax Sale Law in relevant part provides:

> No owner-occupied property may be sold unless the bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause.

72 P.S. §5860.601(a)(3) (emphasis added). The statute thus requires a formal appointment of a specific person to personally serve an owner-occupier.

9

The Bureau must prove it "personally served notice on any owner-occupant of the Property subject to the upset tax sale or obtained a waiver of personal service from the trial court." In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cty. of Props., 132 A.3d 637, 646 (Pa. Cmwlth.), appeal denied, 141 A.3d 482 (Pa. 2016).

Substantial evidence supports the trial court's finding that Owners had actual notice of the sale. In particular, the record reflects that Owners received notice by personal service of the sale. The trial court credited County Poster's testimony that he twice visited the Property to personally serve Owners. Moreover, the affidavit clearly provides two dates "7-21-18 3:00 P[M]," corresponding with County Poster's first attempt to serve Owners and subsequent posting of notice on the Property, and "7-29-18 9:00 P[M]," concerning the actual date of personal service. R.R. at 15a. The affidavit displays Mrs. Sobolewski's signature, indicating that personal service was in fact completed. Id. Further, Mr. Sobolewski admitted that he received personal service at the Property on the date stated in the affidavit. R.R. at 118a.

Relying on the dissenting opinion in Northumberland, Owners contend the tax sale is invalid because the Bureau did not produce the official resolution regarding County Poster's appointment. The dissent noted that although a county may appoint qualified persons under Section 601(a)(3) of the Tax Sale Law, "the appointment is not to be done casually but only by formal resolution." Id. at 657. However, Northumberland is factually distinguishable from the present matter.

10

Unlike in Northumberland, there is no question that Owners were personally served here; rather, the dispute surrounds whether substantial evidence established that County Poster was properly *authorized* to personally serve Owners.

Owners cite no decisional law that requires inclusion of a county's resolution in the evidentiary record to show compliance with the personal service mandate in Section 601(a)(3) of the Tax Sale Law. While the record does not include an official copy of the resolution, the Bureau properly established its existence with other evidence.

Here, the Bureau's witnesses consistently testified that, during a June 20, 2012 public meeting, the Board appointed County Poster as the Bureau's designee for both posting and effectuating personal service of tax sale notices. County Poster testified he was "appointed . . . by the [Board] back in 2012." R.R. at 98a. He emphasized, "back then I know I was appointed by the [Board]. And I've been doing it for seven years now." R.R. at 102a. Director's testimony confirmed "[County Poster] was appointed by the Board" by a motion made during the June 20, 2012 public meeting. R.R. at 83a, 94a. When asked about documentation to support that the Board appointed County Poster other than the minutes, Director responded she did not have the resolution with her.[5] R.R. at 94a.

Importantly, the record includes a copy of the June 20, 2012 meeting minutes in which the Board appointed County Poster to post and personally serve

---

[5] In closing arguments, counsel for Purchaser reiterated the evidence of County Poster's authority. He also stated, "[The Bureau] brought a copy of – admittedly it's unsigned, but there's a resolution that [County Poster] was appointed by the [Board]." R.R. at 131a.

11

notice of tax sales on behalf of the Bureau. R.R. at 161a. The trial court determined this evidence, corroborated by testimony from the Bureau's witnesses, was sufficient to support a finding that County Poster was properly appointed to effectuate personal service of tax sales under Section 601(a)(3) of the Tax Sale Law.

The evidence as a whole establishes County Poster was formally appointed by the county commissioners as required by the Tax Sale Law. We note Owners reference no evidence to the contrary. Accordingly, we discern no error by the trial court in concluding that the Bureau complied with the personal service requirements in Section 601(a)(3) of the Tax Sale Law.

### B. Payment Plan

Lastly, Owners argue the tax sale must be stayed because the Bureau agreed to a payment plan in August 2018. More particularly, Owners maintain Mrs. Sobolewski contacted the Bureau and was informed she could enter into a payment plan by making monthly payments of $100. Mrs. Sobolewski made payments in August and September 2018. Had they known the payment plan was not effective as a stay on the sale, Owners contend they would have paid the delinquent taxes in full.

Pursuant to Section 603 of the Tax Sale Law, an owner may stay the sale of the subject property by paying the taxes in full or by entering into "an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property . . . ." 72 P.S. §5860.603 (emphasis added). An owner establishes a "payment plan" with the bureau to pay

12

all of the tax claims in no more than "three [] installment payments within one [] year of the date of said agreement." Id. However, without a tender of 25% of taxes due, a sale cannot be stayed. In re Upset Sale Tax Claim Bureau of Wayne Cty. Held Sept. 12, 1994, 672 A.2d 846 (Pa. Cmwlth. 1996).

Unfortunately, we are constrained by the plain language of Section 603 of the Tax Sale Law. Despite Mrs. Sobolewski's assertion that she was informed otherwise by a Bureau representative, a payment plan does not stay a sale without tendering a 25% payment on the delinquent taxes. Here, Mrs. Sobolewski's payments represent only 13% of the taxes, which by statute was insufficient to stay the sale. Further, there is no evidence of a written agreement between the Bureau and Mrs. Sobolewski or documentation of Mrs. Sobolewski's alleged phone call to the Bureau. The Bureau's evidence tended to refute that such a phone call occurred, and the trial court referred to the Bureau's evidence in its opinion.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order.

ROBERT SIMPSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Sobolewski and
Janet Sobolewski,

             Appellants

       v.

Schuylkill County Tax Claim
Bureau, In Re: Consolidated
Return of the Tax Claim Bureau
of Schuylkill County From
the September 17, 2018 Upset Sale

:
:
:
:
:
:   No. 117 C.D. 2019
:
:
:
:
:
:

## O R D E R

**AND NOW**, this 31st day of July 2019, the order of the Court of Common Pleas of Schuylkill County is **AFFIRMED**.

 

 

                                  _____
                                  ROBERT SIMPSON, Judge